UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

v.

FRANKLIN GAYLE,

Defendant.

**Hon. Hugh B. Scott**

04CR152

**Report
&
Recommendation**

Before the Court is defendant's omnibus motion seeking (among other forms of relief)

suppression of evidence seized pursuant to a warrant (Docket No. 37). This matter was referred

to the undersigned to hear and determine pretrial matters and to submit proposed findings of fact

and recommendations for disposition of any motions (Docket No. 35). The Court conducted a

suppression hearing on January 31, 2005, and this Report & Recommendation considers the

suppression motion. The matter was deemed submitted as of February 18, 2005.

## BACKGROUND

On September 21, 2000, two Niagara Falls police detectives obtained a search warrant

from Niagara Falls City Court to search defendant's person and his residence at 2005 LaSalle

Avenue, Niagara Falls, New York, and to search for cocaine and other narcotic trafficking items.

(Docket No. 37, Def. Atty. Affirm. Ex. A.) A vehicle registered to defendant's mother was used

by defendant and parked at the LaSalle Avenue house. The detective obtained a warrant to

search the mother's house at 1308 Ashland Avenue, also in Niagara Falls, based upon her

address for the vehicle registration. (Docket No. 37, Def. Atty. Affirm. ¶¶ 30-31, 29, Ex. A.)

The detectives stated in the application that they observed defendant meeting with the informant to conduct a controlled drug sale (id. ¶ 45, Ex. A).

After defendant was pulled over in a traffic stop, the detectives searched defendant's mother's home and defendant's residence at 2005 LaSalle Avenue, as well as defendant's person and vehicle. (Docket No. 37, Def. Atty. Affirm. ¶¶ 5, 6, 7, 8.)  Defendant was brought into his mother's house at 1308 Ashland and was searched, with no contraband found. (Id. ¶ 11.)  The house then was searched and the detective found contraband, as identified in this Court's previous Report & Recommendation (Docket No. 46, at 2).  While the search of 1308 Ashland was going on, defendant's house at 2005 LaSalle was entered and searched. (Docket No. 37, Def. Atty. Affirm. ¶ 15.)  A United States Customs dog was directed to defendant's bedroom and there detected something in the top right dresser drawer in defendant's bedroom (id. ¶¶ 20, 21, 22), with that drawer containing a plastic bag containing other plastic bags with chunks of a tan substance field tested to be cocaine, and a tangent digital scale (id. ¶ 23).  A further search of defendant's bedroom revealed two more plastic bags, his driver's license, and currency in a pillow case totaling $892 in $50, $20s, $10s, and a $2 bill (id. ¶ 24). When confronted at 2005 LaSalle by the searching detectives about the drugs found by the Customs dog, defendant purportedly admitted that the drugs were all his. (Id. ¶ 69.)  No documents were produced showing defendant had been given his Miranda warnings before he made that statement. (Id. ¶¶ 70-71.)

*Charges*

On June 24, 2004, the federal Grand Jury returned a two-count indictment against the defendant charging possession with the intent to distribute cocaine base, a Schedule II controlled substance (<u>see</u> Docket No. 42, Gov't Response at 1).

*First Report & Recommendation*

The Court previously rendered a Report & Recommendation on defendant's present motion (Docket No. 46).  There, it was recommended that defendant's motion to suppress (Docket No. 37) should be granted in part as to evidence seized from 1308 Ashland Avenue, and denied in part as to evidence seized from 2005 LaSalle Avenue, and his motion to dismiss the indictment should be denied.  The Report & Recommendation also scheduled the suppression hearing as to defendant's statements.

*Evidentiary Hearing*

The Court conducted that evidentiary hearing on January 31, 2005 (Docket No. 54, transcript of hearing) as to whether he was advised of his rights, whether he waived his right to remain silent, and the voluntariness of his purported statement.  (No. 37, Def. Atty. Aff. ¶ 76.) Detective Jim Galie testified that he was outside of 2005 LaSalle when the search was conducted and defendant was brought to that scene.  While outside of the house, Galie read defendant his <u>Miranda</u> rights from an advice of rights card the detective carried (Docket No. 54, Tr. at 12-14, 17-18, 55, 65).  Defendant did not initial Galie's <u>Miranda</u> card (<u>id.</u> at 13).  Galie read the warnings at a medium speed and defendant indicated that he understood his rights (<u>id.</u> at 13-14). Galie testified that, after acknowledging that he understood those rights, defendant said that "they got him" (<u>id.</u> at 14, 20, 55).  Then, defendant fell to the ground.  Galie testified that he saw

defendant do that in similar circumstances (id. at 20).  Galie did not question defendant and then

he escorted defendant inside 2005 LaSalle (id. at 20, 14).  Galie later denied threatening

defendant in any way (id. at 66).

At the dining room table was Detective Theodore Weed, the inventory officer for that site

(id. at 24, see id. at 14 (Galie)).  Defendant was seated at the dining room table and Weed asked

him who owned the narcotics.  Defendant replied that "everything there is mine."  (Id. at 25-28.)

Weed testified that he was not aware if defendant had been advised of his rights prior to Weed's

questioning (id. at 27).  When asked about his grand jury testimony, Weed stated that the grand

jury asked if he was aware of defendant being advised of his Miranda rights and Weed said that

he had, but he thought another officer, John Galie, had read the rights.  However, when Weed

questioned the defendant, Weed did not know the defendant was Mirandized (id. at 32).

Defendant testified that he was strip searched at 1308 Ashland (id. at 42, 43).  He stated

that Detective Galie did not read his Miranda rights to him (id. at 45).  He also denied making

admissions to Detective Weed (id. at 47).  He stated that Detective Galie spoke into a walkie-

talkie (presumably back to officers at 1308 Ashland) threatening to place his mother in handcuffs

or put her in jail because defendant was not being cooperative.  (Id. at 48.)  Defendant's mother,

Ernestine Gayle, testified and did not mention any strip search or being threatened with her own

arrest, but she testified that officers "probably took off [defendant's] clothing."  (Id. at 58.)  She

testified that the officers allowed defendant's brother to give him sweat pants and allowed the

brothers to talk during the search of 1308 Ashland (id. at 61-62).

**DISCUSSION**

I.      Suppression of Statements

Defendant seeks suppression of certain statements he allegedly made to one of the detectives.  The government contends that defendant was advised of his <u>Miranda</u> warnings and that, when shown the drugs in his bedroom, he knowingly waived those rights in claiming those drugs as his own.  (Docket No. 42, at 8-9).

Defendant's post-hearing memorandum (Docket No. 52) provides no legal analysis for the importance of whether Detective Weed was aware that defendant was previously given his <u>Miranda</u> warning by Detective Gaile (<u>cf.</u> <u>id.</u> at 1).  Defendant points out that there was no written waiver and no acknowledgment of defendant's waiver when Detective Weed began questioning (<u>id.</u> at 2).  <u>But cf.</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979) (no express written or oral statement of waiver is required).  Defendant also suggests that Weed's testimony differs from his testimony to the grand jury, hence renewing his demand to inspect the grand jury minutes (<u>id.</u> at 1, 3).  The government responds that defendant was read his <u>Miranda</u> rights and voluntarily waived his right to remain silent.

The United States Court of Appeals for the Second Circuit held that "once an arrested person has received a proper <u>Miranda</u> warning, the fact that questioning is stopped and then later resumed does not necessarily give rise to the need for a new warning."  <u>United States v. Banner</u>, 356 F.3d 478, 480 (2d Cir. 2004).  The voluntariness of any subsequent statement depends on the totality of circumstances.  <u>Deshawn E. v. Safir</u>, 156 F.3d 340, 346 (2d Cir. 1998) (citing <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 226 (1973); <u>Haynes v. Washington</u>, 373 U.S. 503, 513-14 (1963), 18 U.S.C. § 3501(b)); <u>Hotchkiss v. Walsh</u>, No. 00 Civ. 5518, 2004 WL 2721943

(S.D.N.Y. Nov. 29, 2004), at *8.  Renewed warnings are generally unnecessary unless

circumstances have changed so seriously that the suspect's answers are no longer voluntary.

Hotchkiss, supra, at *8 (quoting Wyrick v. Fields, 459 U.S. 42. 47 (1982) (quoting in turn

Edwards v. Arizona, 451 U.S. 477, 482 (1981))).

The Court finds Detective Galie to be credible in stating that he read defendant his

Miranda rights outside of 2005 LaSalle.  Defendant then was brought inside the house where he

was questioned about the drugs found therein.  A negligible amount of time elapsed between the

reading of his rights and defendant's questioning.  The interrogation was done by members of the

same police force conducting the search and had apprehended him.  Defendant remained in their

continuous custody.  See Hotchkiss, supra, at *8.  Under these circumstances, defendant did not

need to be re-Mirandized by Detective Weed before his questioning could begin.  See id.; United

States v. Nordling, 804 F.2d 1466, 14771 (9th Cir. 1986); United States v. Hopkins, 433 F.2d

1041, 1045 (5th Cir. 1970).  The Ninth Circuit in Nordling held that a defendant warned on an

unrelated charge who is questioned later on a narcotics charge with no change in his location and

without any time lapse between the warning and the questioning need not be re-administered his

Miranda warnings.  In Hopkins, the Fifth Circuit upheld the admission of defendant's statements

to the Dallas police made minutes after being given Miranda warnings by Federal Bureau of

Investigation agents on another floor of the Dallas jail.  There, the court found there was no

significant time lapse between the federal interrogation and the Dallas police questioning; the

questioning was on the same subject matter; and there was no evidence of the police doing

anything to dilute the efficacy of the warnings.  433 F.2d at 1045.  It was an uninterrupted

sequence of events from being advised of the rights through the actual questioning such that defendant was aware of his rights and knowingly waived them.  Id.

Here, defendant was in an uninterrupted sequence of events from his arrival in police custody at 2005 LaSalle, being advised of his rights in front of that house, through his entry into the house and questioning about the drugs found there.

Defendant here cites to no authority for the proposition that the interrogating officer had to administer (or re-administer) Miranda warnings once those warnings had been given or that the interrogating officer had to be assured that those warnings were given and that defendant understood them in order to conduct the interrogation.

Defendant alternatively argues that he was told that his mother would be arrested if he did not admit to possessing the contraband.  He does not state when in the sequence of events this threat was made.  The voluntariness of a waiver of Miranda rights is measured by whether a defendant had an essentially free and unconstrained choice.  United States v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988).  Whether a confession is knowing and voluntary depends upon the totality of the circumstances.  United States v. Male Juvenile, 121 F.3d 34, 41 (2d Cir. 1997). The Court finds the detectives' version of the questioning more credible.  Detective Galie denied threatening defendant or his mother.  Defendant was familiar with the detectives from prior drug dealings and encounters with law enforcement (Docket No. 54, Tr. at 55-56, 9 (Galie), 25 (Weed)).  Once in custody, Galie advised defendant of his rights (id. at 13-14, 55) and did so in a manner that defendant understood him.

The totality of the circumstances here shows that defendant was advised of his rights and knowingly and voluntarily waived them.  Therefore, defendant's statements admitting possession of the narcotics should not be suppressed.

## CONCLUSION

For the reasons stated above, it recommended that defendant Franklin Gayle's motion to suppress defendant's statements made at 2005 LaSalle Avenue (Docket No. 37) should be **denied**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report and Recommendations to all parties.

**ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIC TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provision of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.


_____
s/HBS
Hon. Hugh B. Scott
United States Magistrate Judge


Dated: Buffalo, New York
        March 7, 2005